IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 10-cr-00326-PAB-17

UNITED STATES OF AMERICA,

    Plaintiff,

v.

17.  TERRY MARGHEIM,

    Defendant.

---

**ORDER EXCLUDING TIME UNDER THE SPEEDY TRIAL ACT,
AND DENYING MARGHEIM'S MOTION TO DISMISS**

---

    This Order pertains to three separate matters before the court: (1) The Government's April 6, 2012, motion to continue the trial in this case by at least seven days on account of the unavailability of a key witness due to a medical condition (Doc. 2136)–a motion this Court granted on April 6 (Doc. 2137). (2) Margheim's April 10, 2012, motion to continue trial on account of the unavailability of Margheim's counsel immediately prior to trial, given the trial's new date (Doc. 2143)–a motion discussed and granted orally by the Court at the April 13, 2012, pretrial conference hearing, continuing trial by two additional weeks, such that it will now commence on May 14, 2012 (Doc. 2168). (3) Margheim's April 13, 2012, motion to dismiss based on alleged Speedy Trial Act ("STA") violations as well as alleged constitutional violations. (Doc. 2164.)

    As discussed below, the Court hereby EXCLUDES seven days under the STA in relation to the first aforementioned continuance of trial; EXCLUDES fourteen additional days under the STA in relation to the second aforementioned continuance of trial; and

1

DENIES Margheim's motion to dismiss.

## I. Speedy Trial Act exclusions

The Court previously granted the Government's motion to continue the trial, set to begin on April 16, 2012. In doing so, the Court found that Special Agent Shane Abraham is an essential government witness, unavailable for one week in order to recover from necessary surgery. In light of those findings, which Margheim does not contest, the STA excludes seven days from the speedy trial clock. See 18 U.S.C. § 3161(h)(3); see United States v. Allen, 235 F.3d 482, 490-91 (10th Cir. 2000).

Additionally, the Court now excludes another fourteen days under the STA's ends-of-justice exclusion, 18 U.S.C. § 3161(h)(7), based on the request by Margheim and his counsel at the pretrial conference hearing on April 13, 2012. In doing so, the Court determines, based upon representations made to the Court during the hearing, that failure to exclude these fourteen additional days from the speedy trial clock would result in a miscarriage of justice and would not permit defense counsel sufficient time to prepare for trial, even in the exercise of due diligence, or to be available to his client immediately prior to trial, if the trial were not continued until May 14, 2012. See id. § 3161(h)(7)(B)(i), (iv).

## II. Margheim's motion to dismiss

A. Statutory arguments

On April 5, 2012, the Court denied Margheim's motion to dismiss this prosecution under the STA–a motion submitted on March 30, 2012, through counsel–based on the Government's delay in trying him. (Docs. 2117, 2128.) With the Court's permission at

the pretrial conference, Margheim has now filed a pro se motion to dismiss, again asserting that his trial, set for May 14, 2012, will violate the STA. (Doc. 2164.)

In light of the STA's exclusion of time attributable to co-defendants, see 18 U.S.C. § 3151(h)(6), Margheim's speedy trial clock did not begin to run until the last of his co-defendants made his initial appearance in this case, on May 24, 2011. See Henderson v. United States, 476 U.S. 321, 323 n.1 (1986); United States v. Mayes, 917 F.2d 457, 460 (10th Cir. 1990). Margheim makes two objections to starting his STA speedy trial clock on that date. First, he suggests that his joinder with the other thirty defendants charged in this case was improper. But § 3161(h)(6)'s exclusion of time attributable to co-defendants applies when "no severance has been granted." Here, Margheim has never moved to sever his trial from that of his co-defendants, and no hearing was ever granted. Thus, his objection on this ground is not persuasive.

Even if Margheim had sought a severance, however, that motion would have failed. Joinder of several defendants for trial is appropriate "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Here, the alleged December 10, 2009, drug sale underlying Count 131 charged against Margheim also forms the basis for Count 137 charged against his co-defendant, Carlos Morales-Gonzales. And the alleged January 22, 2010 drug sale underlying Count 132 charged against Margheim also forms the basis for Count 138 charged against Morales-Gonzales and Count 134 charged against their co-defendant, Skyler Valencia. Furthermore, although Margheim is not charged in the drug-trafficking conspiracy alleged in Count 1, the

3

Government asserted it has evidence linking Margheim to actions taken by the conspirators charged in Count 1.  Therefore, even if Margheim had timely moved to sever his trial from that of his co-defendants, that severance motion would have failed.  See United States v. Caldwell, 560 F.3d 1202, 1212-13 (10th Cir. 2009).

Margheim's second objection to beginning his STA clock on May 24, 2011, is that the ten-month delay between his initial appearance, on July 14, 2010, and the time his final co-defendant made his initial appearance, on May 24, 2011, was unreasonable.  Section 3161(h)(6) excludes only "reasonable" delay attributed to Margheim's co-defendants.  See United States v. Vogl, 374 F.3d 976, 983-84 (10th Cir. 2004).  Considering "all relevant circumstances" and, in particular, whether 1) Margheim is free on bond; 2) he zealously pursued a speedy trial; and 3) the circumstances accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial, id. at 983, the Court concludes this delay was reasonable.

Although Margheim is not and was not free on bond since his arrest, that fact is not dispositive.  See United States v. Olivo, 69 F.3d 1057, 1061 (10th Cir. 1995).  Margheim filed two pro se motions seeking a speedy trial, but he did not file either of them during the ten-month time period between Margheim's initial appearance and that of his last co-defendant.  Further, during this ten-month delay, Margheim successfully sought a 120-day ends-of-justice continuance and changed attorneys several times, necessitating some additional delay.  See United States v. Tranakos, 911 F.2d 1422, 1426 (10th Cir. 1990) (considering similar circumstances).  In considering the third Vogl factor, the Tenth Circuit advises that, "[w]here the government will recite a single factual

4

history, put on a single array of evidence, and call a single group of witnesses, a single trial is preferred." Vogl, 374 F.3d at 983 (quotation omitted). That is the case here as to the related counts charged against Margheim, Morales-Gonzales, and Valencia.

Although Margheim's STA clock thus began to run on May 24, 2011, at that time his motion to suppress was pending. The STA excludes from the speedy trial calculation the time between when a motion is filed and the time the court conducts a hearing on that motion, without regard to the reasonableness of that period of delay. See 18 U.S.C. § 3161(h)(1)(D); see also Henderson, 476 U.S. at 326-30. Margheim's suppression motion was one on which the Court would ordinarily conduct a hearing, and Margheim indeed requested a hearing. But on November 21, 2011, defense counsel withdrew Margheim's suppression motion before the Court scheduled and conducted a hearing. That delay between May 24 and November 21, 2011, is excluded from the STA's speedy trial calculations.[1] See United States v. Maxwell, 351 F.3d 35, 39-40 (1st Cir. 2003).

From November 21, 2011, to the start of trial, on May 14, 2012, 175 days will have elapsed.[2] But the Government has 190 days to try Margheim based on the

---

[1] The STA also excludes this time because of Margheim's pending motion for the disclosure of co-conspirators statements, and in light of pending motions filed by his co-defendants. See 18 U.S.C. § 3161(h)(1)(D), (6).

[2] This is a conservative estimate that does not take into account, because it is not necessary to do so, short excludable periods for, among other things, Margheim's motions to withdraw his previously filed pretrial motions, his counseled and pro se motions to dismiss and for a writ of habeas corpus, his co-defendants' guilty pleas, the Government's motions, and the current motions pending before the Court. See 18 U.S.C. § 3161(h)(1)(D), (6).

seventy days allotted by the STA, 18 U.S.C. § 3161(c)(1), and 120 days the Court previously excluded under the STA's ends-of-justice provision, id. § 3161(h)(7).[3] And that 190-day time limit does not even take into account the additional twenty-one days excluded by the Court in this order.

For these reasons, Margheim's trial, now set to begin May 14, 2012, will not violate the STA.

B. Constitutional arguments[4]

*(1) Sixth Amendment speedy trial claim*

Criminal defendants have a constitutional right to a speedy trial under the Sixth Amendment. See Barker v. Wingo, 407 U.S. 514 (1972). Constitutional speedy trial claims are evaluated more holistically than their statutory counterparts under the STA, and involve a four-factor balancing test. See id. at 530-33. Barker's test is summarized as follows:

> In determining whether a defendant's Sixth Amendment right to a speedy trial has been violated, a court must balance four factors: (1) the length of delay; (2) the

---

[3] In denying Margheim's first motion to dismiss under the STA, the Court upheld the propriety of granting Margheim's request to exclude these 120 days under the STA's ends-of-justice provision. There is nothing in Margheim's current motion to dismiss that causes the Court to reconsider that determination.

[4] In the title of his motion to dismiss, Margheim references "Due Process, 5th, 6th and 14th Amendments of the United States Constitution." However, from the substance of the motion, the Court discerns only a 6th Amendment speedy trial claim and a 5th Amendment due process claim alleging vindictive prosecution. The Fourteenth Amendment is not applicable to Margheim's vindictive prosecution claim in this federal-actor context; the Due Process Clause of the Fifth Amendment is coextensive, as far as Margheim's claim is concerned, with that of the Fourteenth Amendment. See United States v. Thomas, 410 F.3d 1235, 1246 (10th Cir. 2005).

6

reason for the delay; (3) the defendant's assertion of his right; and (4) any prejudice to the defendant. No one of the factors is necessary or sufficient to conclude a violation has occurred. Instead, the factors are related and must be considered together along with other relevant circumstances. The first factor, length of delay, functions as a triggering mechanism and the remaining factors are examined only if the delay is long enough to be presumptively prejudicial.

United States v. Toombs, 574 F.3d 1262, 1274 (10th Cir. 2009) (citation omitted).

With respect to the first factor, delay is measured from the date of a defendant's arrest or his indictment, whichever comes first. See United States v. Marion, 404 U.S. 307, 320 (1971). To trigger Barker analysis, the length of a delay must be both "presumptively prejudicial," and "unreasonable" in light of the specific charges in the case. United States v. Seltzer, 595 F.3d 1170, 1176 (10th Cir. 2010); see also Barker, 407 U.S. at 531. A delay of a year or more is "presumptively prejudicial." Seltzer, 595 F.3d at 1176. In this case, Margheim's indictment occurred roughly twenty-three months before his anticipated trial, so the delay is presumptively prejudicial. However, "even a two-year interval between charges and trial may not be deemed a[n] [unreasonable] 'delay' when the charges are complex." Id. The charges in this case against Margheim are not particularly complicated in themselves, but the interrelation of Margheim's case with the cases of his many (properly joined) co-defendants rendered prosecution of those charges more complicated than if Margheim had been the sole defendant.[5] On the whole, the Court concludes that the delay between indictment and

---

[5] To that end, the Court determined, at a motions hearing on August 3, 2010, that this case was complex within the meaning of the STA–as Margheim's former counsel had urged this Court to determine–in order to exclude time under one provision of the Act. (See Doc. 805 at 37-42.)

trial in this case is sufficiently unreasonably lengthy to trigger judicial examination of Margheim's claim.

The second factor, the reason for delay, is "especially important." Id. at 1177. As the Government points out and as Margheim acknowledges, 120 days of the delay is attributable in part to Margheim's own August 3, 2010, motion for continuance, though the Government also sought a continuance at that time, for the same reason: the ends of justice related to the need for more time to prepare in a complex case. (See Doc. 805 at 37-42.) And generally speaking, the delay in this case has been due to the complicated nature of prosecuting thirty-one (properly joined) co-defendants. Delays attributable to "[the Government's negligence" or "overcrowded courts" are "more neutral reasons [that] should be weighted less but nevertheless should be considered." See Barker, 407 U.S. at 531. Therefore, the even more justifiable reason of complexity of prosecution should be accorded even less weight against the Government, though it must be kept in mind that the complexity was not purely attributable to Margheim, either, so the Court will not hold the delay wholly against him, see Toombs, 574 F.3d at 1275. And nowhere does the Court discern any "deliberate attempt [by the Government] to delay the trial in order to hamper" Margheim's defense, see Barker, 407 U.S. at 531, or to "gain some tactical advantage" or "to harass" Margheim, id. at 531 n.32 (quotation marks, citation omitted), which would have weighed against the Government. Therefore, while "[t]he burden belongs to the government to provide an acceptable rationale for the delay," Seltzer, 595 F.3d at 1177, the Court concludes that the second factor–which is "the flag all [Sixth Amendment speedy trial] litigants seek to capture,"

8

United States v. Loud Hawk, 474 U.S. 302, 315 (1986)–is roughly neutral in Margheim's case.

With respect to the third factor, Margheim has asserted his speedy trial right, though the first time he did so was January 19, 2011 (Doc. 1968), and then again on March 30, 2012 (Doc. 2117 (though making only statutory, STA arguments)), and on April 13, 2012, in his present motion. Margheim's assertion of his speedy trial right is "given strong weight," Seltzer, 595 F.3d at 1179, but the Court "may weigh the frequency and force of [his] objections," United States v. Latimer, 511 F.2d 498, 501 (10th Cir. 1975). His assertions come relatively late in this case, commencing approximately nineteen months after his indictment, relative to an overall projected speedy trial delay of twenty-three months. This undermines Margheim's claim. Compare Toombs, 574 F.3d at 1274 (third factor weighed against defendant who asserted speedy trial right roughly eighteen months after his indictment, when the overall delay was twenty-two months), with Seltzer, 595 F.3d at 1179 (third factor weighed in favor of defendant who asserted the right roughly five and six months, respectively, after his indictment, when the overall delay was roughly two years).

Finally, with respect to the fourth factor of prejudice, three interests are relevant: the respective interests "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired," with the last of those interests being the "most serious." See Barker, 407 U.S. at 532. In this case, Margheim has suffered prejudice under the first interest, since he was arrested about a month after his indictment and has been incarcerated since

9

then.  See Doggett v. United States, 505 U.S. 647, 654 (1992).  Margheim has also suffered prejudice under the second interest, since he has been "subjected . . . to awareness of unresolved the unresolved charges against him."  See id.  However, concerning the third and most important interest, Margheim has not shown that his defense has been prejudiced, e.g., through expiration of evidence, loss of witnesses, or unique fading of memory.  See Barker, 407 U.S. at 531.  And it is his burden to do so.  See Toombs, 574 F.3d at 1275.  Margheim claims only that he now no longer knows the location of a girl who was "at [his] house that would be able to testify that the informant along with the government agent just walked into my house . . . without invitation." (Def.'s Exh. C at 6.)  Margheim apparently means to argue that such testimony would help him to prevail on a motion to suppress, based on an alleged illegal entry under the Fourth Amendment.  However, Margheim withdrew that motion to suppress on November 21, 2011 (Doc. 1892), so that issue is not before the Court, and therefore Margheim will suffer no prejudice in regards to that alleged potential witness.[6]  The

---

[6] Even if Margheim's motion to suppress were still before the Court, the Court reflects that it appears–based on the record in this case, including Margheim's sworn representations to the Court at the April 13, 2012, pretrial conference–that Margheim would not be prejudiced by the loss of this alleged witness, who Margheim claims could testify about the undercover agent's initial entry into Margheim's house.  This is because Margheim's Fourth Amendment argument appears to be fatally flawed by Margheim's apparent ratification of the agent's entry–assuming arguendo it was uninvited and therefore illegal, as Margheim contends–by consensually engaging in and approving of the encounter with the agent once the agent was in Margheim's house. (The Court notes, however, that the Government's account–which the Government asserts is corroborated by video and audio evidence–supports a conclusion that the agent was affirmatively invited inside the house by Margheim, which would make the entry constitutional from the outset.)  Margheim's emphasis on what constitutes his curtilage is beside the point, since consent to an entry makes that entry constitutional, and consent can be retroactively implied by subsequent conduct that, in the totality of the circumstances, demonstrates voluntary consent to the entry.  See, e.g., United States v. Mendoza-Salgado, 964 F.2d 933, 1010-13 (10th Cir. 1992).

Court does not find that Margheim's detention has impaired his ability to defend and prepare his case, see Seltzer, 595 F.3d at 1180 (emphasizing, in finding prejudice, the denial of defendant's right to counsel), as Margheim has had multiple attorneys, is presently represented by able counsel, and has competently submitted multiple pro se briefs, even when already represented by counsel. Also, the twenty-three-month delay in this case is not so extreme as to make it presumptively prejudicial. See Doggett, 505 U.S. at 654 (presuming prejudice with a delay of more than eight years); Toombs, 574 F.3d at 1275 (rejecting presumptive prejudice with a delay of twenty-two months). Given that Margheim has shown prejudice under the first two prejudice interests but has failed to show prejudice under the third and most important interest, this factor weighs against Margheim on the whole. See Toombs, 574 F.3d at 1275-76.

In sum, the first Barker factor weighs in favor of Margheim, but the second factor is roughly neutral, and the third and fourth factors weigh against him. Balancing these factors, none of which is dispositive, Seltzer, 595 F.3d at 1181, the Court concludes that

---

In this case, Margheim represented (under oath) to the Court at the April 13 pretrial conference that the undercover agent's transaction in his home occurred in his presence, without his objection. Thus, even without relying on the Government's proffered account of the encounter (which is that Margheim himself sold drugs and a firearm to the agent), Margheim's own account indicates that he voluntarily consented to the agent's presence and business in his home. Nothing indicates that the entry was gained through coercion or exploitation, and the fundamental element of deceiving defendants through undercover dealings is not unconstitutional per se, see Lewis v. United States, 385 U.S. 206, 206-208 (1966). Nor does it appear the Government is seeking to introduce evidence obtained outside of the contemplated, consensual interaction. See id. at 210. Thus, even assuming that the entry was illegal (again, an assumption contradicted by the Government's asserted electronic and testimonial evidence), it appears that Margheim's motion to suppress–were it properly before the Court–would fail in light of Margheim's voluntary approval of the entry, regardless of whether his referenced would-be witness testified regarding the initial entry.

Margheim's Sixth Amendment speedy trial claim is ultimately without merit, keeping in mind that the remedy for constitutional speedy trial violations is the rare and "unsatisfactorily severe" remedy of dismissal of the indictment, Barker, 407 U.S. at 522.

*(2) Fifth Amendment vindictive prosecution claim*

The Due Process Clause prohibits vindictive prosecution by the Government. See Bordenkircher v. Hayes, 434 U.S. 357, 362 (1978) (holding as much under the Fourteenth Amendment's Due Process Clause); United States v. Thomas, 410 F.3d 1235, 1246 (10th Cir. 2005) (recognizing Bordenkircher's applicability in the federal-actor context under the Fifth Amendment). "To prove prosecutorial vindictiveness, the defendant must prove either (1) 'actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will giver rise to a presumption of vindictiveness,' . . . [in which case] the burden shifts to the government to justify its prosecutorial decision based on 'legitimate, articulable, objective reasons.'" United States v. Sarracino, 340 F.3d 1148, 1177 (10th Cir. 2003) (citations omitted). Margheim asserts a due process violation in this case with regard to his motion to suppress, arguing that the prosecution's advisement that it would seek a sentencing enhancement under 21 U.S.C. § 851 (increasing statutory minimum penalties in light of prior conviction) if Margheim pursued his motion to suppress amounted to an unconstitutional "threat." The principles of Bordenkircher, pronounced in the context of the charges brought by the Government, properly apply also to sentencing enhancements sought by the Government. See, e.g., United States v. VanDoren, 182 F.3d 1077, 1082 (9th Cir. 1999).

While it is "patently unconstitutional" for the Government "to pursue a course of action whose objective is to penalize a person's reliance on his legal rights," Bordenkircher, 434 U.S. at 363 (quotation marks, citation omitted), the basic "give-and-take" practice of plea bargaining is constitutional "so long as the accused is free to accept or reject the prosecution's offer," id.; see also id. at 364-65 ("the prosecutor's desire to induce a guilty plea" constitutionally plays a role in charging decisions). "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" Id. at 364 (citation omitted).

In this case, judging from the emails that Margheim relies on in his motion to dismiss, it does not appear that the Government threatened to file an § 851 enhancement based specifically on Margheim's motion to suppress. The prosecutor did reference Margheim's motion and indicated that the Government's timing of filing of an § 851 enhancement might likely coincide with Margheim's litigation of the motion–which, as had been communicated to defense counsel, the Government deemed meritless. However, the Government's communications did not indicate that the Government sought an enhancement out of vindictiveness in retaliation to Margheim's filing of his suppression motion. Rather, the Government was advising Margheim that his continued litigation, generally, of his case would likely cause the Government to seek the enhancement, and that his pursuit of the suppression motion was evidence of his

13

desire to continue ligitation.[7]  And the essence of a due process violation in this context lies not in the deterrence of the exercise of a legal right but rather in the danger that the Government might be retaliating out of vindictiveness against the accused for the lawful exercise of his rights.  Id. at 363.

On the facts of this case, the Court discerns neither actual vindictiveness nor a realistic likelihood of vindictiveness.  First, the sentence enhancement referenced by the Government has a legitimate basis in statute.  See 21 U.S.C. § 851; Bordenkircher, 434 U.S. at 364.  Next, this was not a case of post hoc "unilateral imposition of a penalty upon a defendant," Bordenkircher, 434 U.S. at 362, but rather involved the prosecutor's constitutional exercise of her "interest at the bargaining table . . . to persuade the defendant to forgo his right to plead not guilty."  Id. at 364.  The Government may constitutionally seek to dissuade a defendant from pursuing litigation by making it clear that it will seek greater (legitimately based) penalties if a defendant exercises that right;

---

[7] The second of the two emails relied upon by Margheim (see Doc. 2164, Attachment (6/21/11 email)), which is more helpful to his argument than the first email, includes the following statements from the prosecutor to Margheim's attorney:

> If [Margheim] does not plead guilty before further litigation, there is a strong likelihood that we will review this case for all applicable sentencing enhancements, and we will file them.  Every Case must be assessed on its own merits, [defense counsel], and my assessment in this case is that Mr. Margheim's decision to litigate meritless matters [i.e., the suppression motion] is an indication that he does not wish to accept responsibility, but wishes to hold the Government to its burden of proof. We will meet that burden, but Mr. Margheim needs to be aware that all applicable sentencing enhancements may, and likely will be filed upon litigation of the suppression motion.

In the first email, the prosecutor simply noted that, at present, she was finishing up the Government's response to Margheim's motion to suppress, and it "str[uck] her as a good time to ask" why Margheim would not plea bargain, given the overall strength of the evidence against him in the case.

due process is violated only when the Government retaliates against exercise of that right, based purely on vindictiveness. Id.

The relevant, post-Bordenkircher cases cited by Margheim involve subsequent filings of felony charges on top of previously existing misdemeanor charges only after the defendant exercised his right to a jury trial, and without any new evidence or other justified explanation. See United States v. Goodwin, 637 F.2d 250, 253-54 (4th Cir. 1981) (due process violation where felony charges filed based on same facts as previously filed misdemeanor charges, only after defendant exercised his right to a jury); United States v. Currie, 667 F.2d 1251, 1253 (9th Cir. 1981) (same). Margheim's case is distinguishable. For one, the filing of a sentence enhancement is less serious than the filing of new felony counts. This is not a dispositive distinction, but the Court notes it as meaningful in its evaluation of vindictiveness. Moreover, contrary to Margheim's characterization of this situation, the prosecution did not put forth its proposition as a vindictive post hoc reaction to the exercise of a legal right; rather, the Government seems simply to have been exercising its constitutional prerogative of inducing an early guilty plea with legitimate, upfront terms that Margheim was free to accept or reject if the Government could avoid expensive trial preparation. See Bordenkircher, 434 U.S. at 363. Further, in contrast to the common practice with indictments, where all counts are generally charged at the outset of the case, the common practice with § 851 sentence enhancements is not to file them at the outset of a case. Those enhancements routinely are filed well into litigation. Unlike the extraordinary cases of arbitrary post hoc

filing of new felony charges, the Government in this case appears to have been following a well-established routine.

The Court determines that no due process violation occurred here.

**Conclusion**

For the foregoing reasons, the Court EXCLUDES a total of twenty-one (21) days under the Speedy Trial Act in this case, and DENIES Margheim's motion to dismiss.

Dated this  19th  day of April, 2012.

BY THE COURT:

*s/ David M. Ebel*

_____

UNITED STATES DISTRICT COURT